## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD WILKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  CIVIL NO. 08-cv-732-JPG |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Gerald Wilkins is a currently an inmate at Tamms Correctional Center. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. ___, 2009 WL 1361536, *13 (May 18, 2009). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

**THE COMPLAINT**[1]

On March 2, 2008 Wilkins was assaulted by Defendants Hunziker, Peterson, and Benefield during a cell extraction. Later, Wilkins was taken to the medical ward, where Defendants Meltonn and Han, who work as nurses, falsified his records and down played his injuries in an attempt to cover up the assault.

Wilkins field a grievance based on the assault, and was retaliated against on at least four separate occasions. First, on April 14, 2008, Defendants Peterson and Benefield performed a cell shakedown of Wilkins's cell, after which Wilkins noted that his property was in disarray, and some of his legal documents were missing. Second, on June 1, 2008, Peterson performed another cell shakedown, telling Wilkins that it was because he had filed a grievance against Defendant Hunziker. Third, on August 5, 2008, Peterson performed another cell shakedown, after which Wilkins noticed that one of his magazines had been destroyed, certified copies of his motions were missing, and a book had been torn in half. Fourth, in September of 2008, Peterson entered Wilkins's cell to return legal property, and in Wilkins's absence Peterson urinated on Wilkins's clothing and bedsheets. Wilkins was warned by Defendants Peterson, Hunziker, and Benefield to dismiss a pending suit against Tamms Correctional Center, or the treatment he had

---

[1]For purposes of this review, the Court assumes all well-pleaded fact allegations are true.

received would continue.

On May 2, 2008 Wilkins was assaulted in the prison law library by Defendants Hunziker, Mason, Hunsanker, and Dubois. The assault occurred after Defendant Williams allowed the other Defendants to enter the law library. The Defendants then wrote Wilkins a disciplinary ticket for beginning the assault, and after an administrative hearing by Defendant Mitchell, Wilkins was placed in segregation.

Wilkins made written requests of Defendants Barley, Lambert, Hartline, Walker, and Blagojevich to assist him in removal from segregation and punishment for the guards that had assaulted him, but these requests went unanswered. Wilkins also filed a grievance, but his inquiries to Defendants Moore and Houston about the status of that grievance were ignored. After receiving the grievances, Defendant Clark administered an internal investigation of those offending guards, but found that there was no wrong doing to warrant discipline.

Based on the allegations, the Court divides Plaintiff's *pro se* action into 17 counts.[2] The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendants Hunziker, Peterson, and Benefield for using excessive force on Plaintiff on March 2, 2008, in violation of the Eighth Amendment.
>
> **COUNT 2:** Against Defendant Wright for failing to protect Plaintiff from the use of excessive force on March 2, 2008, in violation of the Eighth Amendment.
>
> **COUNT 3:** Against Defendants Hunziker, Peterson, and Benefield for retaliating

---

[2]Plaintiff's complaint has 19 enumerated counts plus a claim under the Federal Tort Claims Act (FTCA). Some of Plaintiff's enumerated claims, however, are duplicative.

against Plaintiff on April 14, 2008, June 1, 2008, August 5, 2008, and September 2008, in violation of Plaintiff's First Amendment rights.

**COUNT 4:** Against Defendants Hunziker, Peterson, and Benefield for damaging Plaintiff's personal property during the acts of retaliation described in Count 3 in violation of Plaintiff's right to Due Process of law.

**COUNT 5:** Against Defendants Hunziker, Mason, Hunsanker, and Dubois for using excessive force on Plaintiff on May 2, 2008, in violation of Plaintiff's Eighth Amendment rights.

**COUNT 6:** Against Defendant Williams for failing to protect Plaintiff from the use of excessive force on May 2, 2008, in violation of the Eighth Amendment.

**COUNT 7:** Against Defendants Hunsiker, Mason, Hunsanker, Dubois, and Williams for denying Plaintiff Equal Protection of the law in connection with the May 2, 2008 assault.

**COUNT 8:** Against Defendants Mason, Hunziker, Hunsanker, and Dubois for conspiring to violate Plaintiff's Eighth and Fourteenth Amendment rights by using a false disciplinary violation report to cover-up the May 2, 2008, attack.

**COUNT 9:** Against Defendants Barley and Lambert for failing to protect Plaintiff from the conspiracy alleged in Count 8 by "refusing to intervene" and "continuously assigning" Defendants Hunziker, Peterson, and Benefield around Plaitniff.

**COUNT 10:** Against Defendants Barley, Lambert, Hartline, Walker, and Blagojevich for conspiring to violate Plaintiff's Eighth Amendment rights by refusing to give Plaintiff a polygraph exam and by denying Plaintiff's request to examine the surveillance cameras and eyewitness statements in an effort to cover-up the March 2 and May 2, 2008, attacks.

**COUNT 11:** Against Defendants Barley, Lambert, Hartline, Walker, and Blagojevich for denying Plaintiff Equal Protection and Due Process of law by refusing to give Plaintiff a polygraph exam and denying Plaintiff's request to examine the surveillance cameras and eyewitness statements in an effort to cover-up the March 2, and May 2, 2008, attacks.

**COUNT 12:** Against Defendants Meltonn, Han, Hunzicker, Peterson, Benefield, and Wright for conspiring to falsify Plaintiff's medical records in an effort to cover-up the March 2, 2008, attack in violation of Plaintiff's constitutional rights.

**COUNT 13:** Against Defendants Moore and Houston for ignoring Plaintiff's request for status reports concerning Plaintiff's grievance (May 2 attack) in violation of Plaintiff's First Amendment rights.

**COUNT 14:** Against Defendants Moore and Houston for conspiring to prevent Plaintiff from exhausting his administrative grievances in violation of Plaintiff's constitutional rights.

**COUNT 15:** Against Defendant Mitchell for denying Plaintiff due process of law in connection with the allegedly false report issued to Plaintiff in connection with the May 2, 2008, use of force.

**COUNT 16:** Against Defendant Clark for conspiring to cover-up the March 2, 2008, attack by failing to conduct a proper investigation in violation of Plaintiff's constitutional rights.

**COUNT 17:** Against unspecified Defendants under the Federal Tort Claims Act,

<u>DISCUSSION</u>

**A. Excessive Force Claims (Counts 1 and 5).**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Whether the force used by the Defendants Hunziker, Peterson, and Benefield as alleged in Count 1 or the force used by Defendants Hunziker, Mason, Hunsanker, and Dubois in Count 5 was applied in good faith to prevent Wilkins from causing injury, or simply to cause Wilkins harm, remains to be seen and for this reason Counts 1 and 5 survive threshold review and should not be dismissed

at this time.

**B. Failure to Protect Claims (Counts 2, 6, and 9)**

In Count 2, Wilkins claims that Defendant Wright failed to protect him from the March 2 assault because Wright, as the officer in charge of the Defendants involved in that assault, is vicariously liable for their actions. This claim should be dismissed. "The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' " *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). In this case, Wilkins alleges only that Wright is liable under "respondent superior." There is no allegation indicating that Defendant Wright knew that Plaintiff was in need of protection from the Defendants who attacked him or that he was deliberately indifferent to the risk that the Defendants might attack him. Therefore, Count 2 of the complaint should be dismissed pursuant to § 1915A.

In Count 6, Wilkins also claims that Defendant Williams failed to protect him from the May 2 assault by allowing the Defendants involved with that assault to enter the law library when he knew Wilkins was present. A "failure to protect" claim is just a species of an Eighth Amendment claim. *See Farmer v. Brennan,* 511 U.S. 825 (1994). A prison official violates a prisoner's Eighth Amendment right to be protected from an attack - either by other inmates or by guards - only when the prisoner is incarcerated under conditions posing an objectively serious risk of harm to him and when the prison official acts with deliberate indifference to that serious risk of harm. *Id.* at 834. The bulk of Plaintiff's claims against Defendant Williams are just mere legal conclusions (e.g., Williams "maliciously, willfully opened up the law library door"). By

6

itself, merely opening a door for other prison officials does not create a serious risk of harm. At this point, however, the Court will let Count 6 go forward against Defendant Williams. While it is a stretch to infer that Williams knew that the Defendants were going to attack him, it is not - at this point - an unreasonable inference. Therefore, Count 6 should not be dismissed at this time.

In Count 9, Wilkins claims that Defendant Barley failed to protect him from attack by the Defendants Peterson, Hunsiker, and Benefield by "continuously assigning" these Defendants to guard him. Liberally construing the complaint, Wilkins claims that Barley knew there was a serious danger of attack by the Defendants because Barley was aware of prior incidents. Wilkins contends that Defendant Barley acted with deliberate indifference by refusing to move Wilkins to another location. The Court finds that Count 9 survives threshold review and should not be dismissed at this time.

### C. Retaliation Claim (Count 3)

In Count 3 of the complaint, Wilkins contends that Defendants Hunziker, Peterson, and Benefield retaliated against him on several occasions because Plaintiff filed a grievance concerning the March 2 assault. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Therefore, Count 3 of the complaint survives review under § 1915A and should not be dismissed at this time.

### D. Damage to Personal Property (Count 4)

In Count 4, Wilkins claims that because of the retaliatory actions described in Count 3,

7

some of his personal property was damaged. In the Court's interpretation of the complaint any damage to Wilkins's personal property that is the result of retaliatory acts described in Count 3 is already included in Count 3 of the complaint. The Court interprets Count 4 of the complaint as attempting to assert a claim for damage to Wilkins's property even if the acts alleged in Count 3 do not constitute retaliation.

As construed by the Court, the only constitutional right that might be implicated by Count 4 is Wilkins's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the Due Process clause of the Fourteenth Amendment, Wilkins must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Wilkins has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS 505/8 (1995). Accordingly, Count 4 of the complaint should be dismissed.

### E. Equal Protection Claim (Counts 7 and 11)

In Count 7, Wilkins claims that the assaults and cell shake downs were also an attempt by the Defendants Hunziker, Mason, Hunsanker, Dubois, and Williams to deprive him of his right to Equal Protection of the law. Further, in Count 11, Wilkins claims that Defendants Lambert, Hartline, Walker, and Blagojevich also deprived him of Equal Protection by refusing to give Plaintiff a polygraph exam and denying Plaintiff's request to examine the surveillance

8

cameras and eyewitness statements in an effort to cover-up the March 2, and May 2, attacks.

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987); *citing Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996), *quoting Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

Wilkins has not stated a claim for violation of his right to Equal Protection because he has not stated that he belongs to a class that has been purposefully discriminated against by any of the Defendants. Thus, Counts 7 and 11 (equal protection component) must be dismissed.

**F. Disciplinary Action Claims (Counts 8 and 15)**

In Count 8, Wilkins alleges that Defendants Mason, Hunziker, Hunsanker, Dubois, and Williams conspired to give him a false disciplinary report in an effort to cover up the May 2 attack. In Count 15, Wilkins contends that he was denied due process of law by Defendant Mitchell, the prison official who heard and reviewed the (false) disciplinary violation. Specifically, Wilkins claims that Defendant Mitchell was not an impartial decision-maker and excluded evidence which would have exonerated Wilkins of any wrongdoing. It is unclear what

9

disciplinary sanctions (if any) were imposed on Plaintiff who - it appears - was found guilty of the conduct violation by Defendant Mitchell.

Conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

In *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Seventh Circuit reasoned that prisoners have a right "to be from arbitrary actions of prison officials," *id.* at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation. In the instant complaint, Plaintiff argues that he was *not* provided the procedural protections outlined in *Wolff* - primarily because the disciplinary hearing office (Defendant Mitchell) - was biased against him. Therefore, Plaintiff would appear to claim that issuing him the (false) conduct violation - and denying him procedural due process in connection with that conduct violation - deprived him of his substantive right "to be from arbitrary actions of prison officials."

In *Sandin v. Connor*, 515 U.S. 472 (1995), however, the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id.* at 484. Furthermore, the Supreme Court held

10

that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as on administrative segregation and protective custody. *Id*. at 2301.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.* Although the Seventh Circuit has not expressly disavowed *Hanrahan*, the decisions in *Sandin* and in *Wagner* have effectively eviscerated it. In short, this Court understands *Sandin* and *Wagner* as holding that a prisoner's confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest - under either the Due Process Clause or state law (even if such confinement is arbitrary) - so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. If the inmate is housed at the most restrictive prison in the state, the inmate must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.*

In the case currently before the Court, nothing in the complaint or exhibits suggests that the conditions that Wilkins had to endure because of being found guilty of the (false) conduct

11

violation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Accordingly, Plaintiff has failed to allege facts indicating that he was deprived of a liberty interest - either under the Due Process Clause or created by the State. Because he was not deprived of a liberty interest, Wilkins's conspiracy claim also fails. Therefore, Counts 8 and 15 of the complaint must be dismissed.

### G. Failure to Give Plaintiff Certain Evidence (Counts 10 and 11).

In Count 10, Wilkins alleges that the Defendants conspired to violate his Eighth Amendment and Due Process rights by refusing to give him a polygraph exam and by denying Plaintiff's request to examine the surveillance camera videos and eyewitness statements concerning the March 2 and May 2 attacks. In Count 11, Wilkins claims that the Defendants denied him Due Process and Equal Protection by refusing to give the same things. As noted above, conspiracy is not an independent basis of liability in § 1983 actions. *Smith v. Gomez,* 550 F.3d at 617; *Cefalu v. Vill. of Elk Grove*, 211 F.3d at 423.

In subpart E, above, the Court determined that Plaintiff had not alleged a violation of his rights under the Equal Protection Clause. Because there was no violation of Wilkins's Equal Protection rights, Wilkins's claim that the Defendants conspired to deprive him of Equal Protection must be dismissed. Accordingly, the Court next considers whether Wilkins's allegation that the Defendants failed to give him the items he requested violated either Wilkin's Eighth Amendment or Due Process rights. If neither Wilkins's Eighth Amendment or Due Process rights were violated, then his conspiracy claims must be dismissed.

Likewise, in subpart F, above, the Court determined that Wilkins had not alleged a

violation of his right to Due Process of law. Because there was no violation of Wilkins's Due Process rights, Wilkins's claim that the Defendants conspired to deprive him of Due Process must be dismissed.

With respect to Plaintiff's Eighth Amendment claim, there is no doubt Plaintiff believes that depriving him of the evidence was "cruel." However, there is nothing in the complaint indicating that Plaintiff is being deprived of basic human needs like food, medical care, sanitation, and physical safety. Deprivations of these basic human needs is necessary to establish an Eighth Amendment claim. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). The Eighth Amendment protects Plaintiff from "cruel and unusual" punishment, it does not afford Plaintiff any rights to obtain, view, or inspect any evidence that may be gathered about Plaintiff's prison activities. Consequently, Counts 10 and 11 should be dismissed pursuant to § 1915A.

Furthermore, with respect to Defendants Walker and Blagojevich, the Seventh Circuit recently stated:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each

13

> prison, is entitled to relegate to the prison's medical staff the
> provision of good medical care. *See Durmer v. O'Carroll*, 991
> F.2d 64 (3$^d$ Cir. 1993).

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). It would completely undermine these stated principles to find that a bald, unsupported legal conclusion that the Governor (Defendant Blagojevich) and the Director of the Illinois Department of Correction (Defendant Walker) conspired to deprive Plaintiff of his constitutional rights by refusing to give him the evidence he requested stated a claim upon which relief may be granted.

### H. Medical records claim (Count 12)

In Count 12, Wilkins claims that the Defendants Meltonn, Han, Hunzicker, Peterson, Benefield, and Wright conspired to falsify his medical records in an effort to cover-up the March 2 attack. Again, conspiracy is not an independent basis of liability in § 1983 actions. *Smith v. Gomez,* 550 F.3d at 617; *Cefalu v. Vill. of Elk Grove*, 211 F.3d at 423. It is at least arguable that falsifying Wilkins's medical records implicates his Eighth Amendment rights because the deliberate inaccuracies may prevent him from receiving adequate medical care. *See Medina v. Emard,* Case No. 1:06-cv-697-LIO-SMS, 2008 WL 4057660 *7 (E.D. Ca. Aug. 26, 2008); *see also, Dawson v. Kendrick*, 527 F.Supp. 1252, 1306-07 (S.E.W. Va. 1981). Therefore, Count 12 should not be dismissed at this time.

### I. Grievance claims (Counts 13 and 14).

In Count 13, Wilkins claims that Defendants Moore and Houston prevented him from filing a grievance concerning the May 2 attack by ignoring Wilkins's request for "status or receipt of" the grievance. In Count 14, Wilkins claims that Defendants Moore and Houston conspired to prevent him for exhausting his administrative remedies with regard to the May 2

14

attack. Although the Court is at a loss to understand how the alleged failure to give Wilkins a "status report" concerning Wilkins's grievance is a "denial" of the grievance, even if it did constitute a denial, it does not rise to the level of a constitutional violation. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

While prisoners are required to exhaust their administrative remedies as a prerequisite to filing a § 1983 action, 42 U.S.C. § 1997e(a), a prisoner's failure to exhaustion of administrative remedies is an affirmative defense to the action to be asserted like any other affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Moreover, prisoners are required to exhaust only such remedies as are available. If prison officials prevent a prisoner from filing a grievance or otherwise exhausting his remedies such as failing to give the prisoner the proper forms or not responding to his grievance, then the prisoner has exhausted the remedies available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). In short, the alleged interference with Wilkins's administrative remedies does not give rise to a cognizable constitutional claim. At best, if the Defendants assert a defense, Wilkins may argue that Moore's actions blocked his ability to pursue the normal remedies and, therefore, he did all that could do. Therefore, Counts 13 and 14 should be dismissed.

**J. Claim concerning investigation (Count 16)**

In Count 16, Wilkins alleges that Defendant Clark failed to properly conduct an internal affairs investigation into the March 2 attack and, additionally, conspired to cover-up the wrongful use of force by other Defendants. As noted above, Wilkins does not have a due process right to file grievances. *Antonelli* 81 F.3d at 1430. As such, prison officials incur no liability under § 1983 if they fail or refuse to investigate such grievances as prisoners are permitted to file. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (inmate's claim that prison officials failed to investigate his grievances that mailroom and security staff was stealing his property was indisputably meritless because inmate did not have a due process right to an investigation). Because inmates do not have a due process right to have their claims investigated at all, an allegation that any investigation which is actually conducted by prison officials was "inadequate" or "improper" does not state a constitutional claim. Therefore, Count 16 should be dismissed.

**K. FTCA claim (Count 17).**

In Count 17, Plaintiff alleges that the Defendants are liable to him under the FTCA. The FTCA makes the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Because all of the named Defendants are state employees - not federal employees - no liability accrues under the FTCA even if the complaint could be interpreted as asserting a cognizable tort. Therefore, Count 17 should be dismissed.

**L. Claims against the Illinois Department of Corrections**

Finally, Wilkins's claims against the Illinois Department of Corrections should be dismissed. The Supreme Court has held that "neither a State nor its officials acting in their

official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same).

**DISPOSITION:**

In summary, Counts 2, 4, 7, 8, 10, 11, 13, 14, 15, 16, and 17 of the complaint do not survive review under § 1915A. Accordingly, these counts as against these specific Defendants are **DISMISSED** with prejudice. Plaintiff is advised that the dismissal of this Counts will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Defendants Illinois Department of Corrections, Blagojevich, Walker, Hartline, Clark, Wright, Mitchell, Moore, and Houston are **DISMISSED** from this action because there are no claims pending against them.

Counts 1, 3, 5, 6, 9, and 12 survive review under § 1915A as against **LAMBERT, HUNZIKER, BENEFIELD, PETERSON, BARLEY, HUNSANKER, MASON, WILLIAMS, DUBOIS, HAN,** and **MELTONN**. The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **LAMBERT, HUNZIKER, BENEFIELD, PETERSON, BARLEY, HUNSANKER, MASON, WILLIAMS, DUBOIS, HAN,** and **MELTONN**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of

17

the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **LAMBERT, HUNZIKER, BENEFIELD, PETERSON, BARLEY, HUNSANKER, MASON, WILLIAMS, DUBOIS, HAN,** and **MELTONN** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Plaintiff's motions for the Court to provide Certified Copy of the Original Complaint and to Direct Plaintiff on How to Proceed on Providing Defendants copies of the Complaint (Doc. 5) are **DENIED**.

Plaintiff's motion for Court to Provide Plaintiff with copies of each and all electronic filings (Doc. 6) is **DENIED**.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for

disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED**.

**Dated: July 1, 2009.**

                                          **s/ J. Phil Gilbert**
                                          **U. S. District Judge**